Good afternoon. If it may please the court, my name is Louis Sayoun, and I represent Berezovsky, the purchaser at the HOA auction as well. I don't want to go through a lot of the same issues that were just covered. I will mention this. The facts of this case are generally similar in the sense that there was the unrecorded assignment. Freddie Mac has taken the position that they are the property. Now, I do want to mention one thing. As Counsel Mr. Johnson stated, Nevada law does control in terms of whether property interest is defined. Now, if you look at the 4617 statute, it says no property of the FHA. In order for the FHA to at least go forward with claiming an interest in the property, they still have to perfect it under Nevada law, which in this case they haven't done so. They turned around. There was an unrecorded assignment in this case. At least in the facts of this matter, the assignment is to Bank of America. So there's no there's nowhere in this case that their assignment has been transferred over to FHA. I'm sorry, to Freddie Mac. So basically, they still haven't complied with their Is that clear from the record below? Yes. The assignment is to Bank of America. There is no assignment to any Federal entity, any of the enterprises as a term of art that's been used. It's only still in the name of Bank of America at this point. Again, as we were kind of discussing, that's generally what we're talking about here is the ownership interest. Now, the question was asked in terms of So be specific, then. In the other case, there were some documents showing some transaction at the relevant time with Freddie Mac, and the argument is that it wasn't evidentially sufficient. Are you saying there are no documents, or what exactly are you saying? The evidence is generally the same in terms of these screenshots that they are showing that there are From the relevant time, from a pre-sale time period. That's right. But there's no record. In either case, there hasn't been any recordings in That's what you were talking about before. So how is this different, then? In terms of there isn't It's not in terms of Is there a MERS recording here? Well, it's a transfer Well, actually, in this one, there's a transfer to the servicer to Bank of America in this case. So it went from the original lender to MERS, and I believe then to Bank of America. In this case, the other case was different in the sense that What was recorded at the time of the sale? At which sale? The HOA sale? Yes. Prior to the HOA sale, there was an assignment from or there was an assignment to Bank of America who was the who is listed as the beneficiary of the deed of trust. That wasn't recorded. No, that was recorded. What's the problem? In terms of there is no recording or there is no identification of Freddie Mac being involved in it. So it's the same as the other case in that regard. You were trying to tell us there was something different, but in fact, it's the same. The only difference is that there was a foreclosure and that there was a bank foreclosure in the Elmer case. There wasn't in this case. This case is there hasn't been a foreclosure, but generally, the underlying facts are almost identical. I mean, there hasn't been a foreclosure, a second foreclosure. There hasn't been a bank foreclosure. That's correct. Right now, the property lies with Mr. Borowski. But they're threatening to foreclose it? I haven't seen any foreclosure activity. Why are we having this? This is a declaratory judgment case. What is it? It's they're basically, well, the order basically states that the first deed of trust has not been extinguished. So to the extent that the declaratory action is saying that because of the operation of 116, there should have been an extinguishing of a first deed of trust, the order on the lower court basically states that there hasn't been an extinguishment of that first deed of trust. So that's where the dispute lies. Okay. But what did you file, your client filed this case as a quiet title action? Is that what it is? That's correct. In state court, then it was removed. I see. Okay. And why are these cases removed, by the way? Because one of the parties is a federal agency? I'm sorry. What is the basis for the removal in these cases? I believe it was diversity. It was diversity jurisdiction. No, it wasn't. Really? Oh, okay. Not a federal question. No, I'll have to — I know that they conceded diversity jurisdiction in their briefing, but I'll — that's what the briefing states here. Okay. Go ahead. Unless there's any other questions at this point. Can you address standing on the due process claim? I'm sorry. To the extent, Mr. Baraschowski, you're trying to vindicate the HOA's rights? To the extent — yes, you're correct. To the extent that there is a potential due process, I know that argument has been briefed in other matters before this Court that is coming up. So the due process argument generally is based on the HOA's argument. To the extent that the HOA then sold a property that is subject to a first deed of trust, the only due process in that case would be trying to stand in the shoes of the HOA because there could be a potential claim against the — or by Mr. Baraschowski against the HOA based on selling the property that is now subject to a first deed of trust. You mean, did Baraschowski sell the property? No. If he were to. If he were. Or he could have a claim against the HOA based on that due process, that the lien rights of the HOA were potentially violated by due process. But, again, I know that there are other due process arguments that have been made in front of this Court. What you're saying is this one. We should forget about it here because it's all very speculative. Yes. Thank you, Your Honor. Also, on the Section 1825 issue, previously we heard a reference to the FDIC statute. Yes. Isn't the McFarland case — you cite McFarland out of the Fifth Circuit, correct? Yes. Isn't the text of Section 1825 materially different from the statute here? Potentially. The difference in this case, though, or at least the difference in the FDIC, is that they have — there's two things. One is that there's at least the format to be able to bring — if the lien was previously on property that had been in receivership or then taken over by the FDIC, that lien would still exist. And then, two, there is at least more of the ability to find out consent from the FDIC in order to foreclose on the property. But otherwise, those are the — you know, they've argued at least what we can do. Well, why would they ever consent? That's the part I don't understand. I mean, if you're — if you show up and you say, I've just bought this house for $5,000 and I want you to consent that I — that your lien is gone, why would they do that? And, Your Honor, I don't have a great answer to that question. But that is what the language says. I didn't — you know, we didn't — I know, but it just seems immaterial because it's never going to happen. I mean, I can — I can at least assume in some circumstances. I know that NRAS 116 has different abatement-type liens that they could put on liens if there's a public hazard to the house. For example, if there was, like, a balcony that was falling off, they could choose to go in there and then fix the house and then put a lien on the property. So I — there may be a consent issue there, but I — but, again, I don't — I didn't read — I didn't write the statute, so I don't know if there would be. What I can say, though, that is that because they have argued that we will never consent in any circumstance, that's more of a policy issue by the FD — HFA and not necessarily what's in the statute. So it wouldn't trigger any preemption. I see. But looking at the — the Federal foreclosure bar language, unlike the FDIC language, there's a very broad applicability provision up front. And taxation is carved out in only one section. So aren't those materially distinguishing aspects of — of the foreclosure bar statute? You're right. And I think what we're — and what we're arguing, basically, is not that the — it's that the consent language, one, is pulling out — it's not necessarily — the Federal foreclosure bar, as they're calling it, is really more of a policy that they're — they're stating. They're saying that we will never consent. But that's not actually what the statute says. It allows for the consent. So even though there may be this property tax carve-out there, the ability to actually go in and say, yes, you can lien the property through consent, basically takes the preemption out of it. So what — we're just basically arguing that it's not — there isn't preemption there because you are allowed to — you know, at least there is the consent language, not the carve-out. And therefore, you're saying there isn't a direct conflict, but that — I mean — There's — it's exactly right. We're — we're saying there's no conflict because NRS 116 can coexist with 4617. In fact, the Skylights decision that we all kind of have gone back forth, in that circumstance, you had a beneficial deed of — the beneficiary or Freddie Mac had been transferred the property of the beneficiary prior to the HOA foreclosure sale. So in that case, they could argue — you could — you could reach the same conclusion in that case without arguing preemption, only to the extent to be able to say, well, FHFA never consented to this, so therefore you're still subject to the D.A. trust. So I think that you're — we can — 116 and 4617 can both coexist because of the consent language. Okay. Anything else? No. Unless you have any more questions. Thank you. Thank you, Your Honor. So is there anything different about this case? Well, there — I heard some slightly different things. It's largely the same. I want to talk a little bit about preemption. We've heard now this argument that because it's possible for FHFA to consent, that preempt — there's no conflict and preemption doesn't apply. And I just want to kind of unpack that for a minute, because Congress — Well, isn't the easiest unpack that is that if there isn't consent, there is preemption? I mean, in other words, I don't really understand the argument. I mean, the fact that — I don't understand their argument. I don't either, because Congress enacted a statute that says this can't happen unless you consent. And their argument is — But isn't the — is it possible that by allowing for consent but not making it a blanket consent, it contemplated the possibility of Federal and State law coexisting? I think it does, but that doesn't eliminate the conflict, because let's just think about it, and I sort of unpack it a little bit. Their argument is if FHFA consents, then the property interest can be extinguished. And if FHFA doesn't consent, the property interest is still extinguished, because the possibility of consent renders the statute nonpreemptive. So the possibility of consent means the provision is meaningless. That just — that can't be right. It cannot be right that Congress would enact a statute that says unless FHFA consents, this property interest survives. Yet because FHFA can consent, the property interest is extinguished by State law. That's a — that is the quintessence of the — To go back to my original — one of my earlier questions to you, I mean, in other words, you were helpful in explaining that you were reading subject to foreclosure as meaning subject to an effect from foreclosure. But is there any case that actually in either context, either this one or FDIC, that addresses — I mean, that isn't the usual — that isn't the way I would read that language ordinarily. So is there any discussion of it in any cases? What I would say is cases— What's the answer to my question first? Is there any case law that deals with what subject to foreclosure means in this context? I'm not aware of a case that does a linguistic analysis. However, if we look at the holdings in cases like Matagorda County— Well, I know everybody's assumed it. I know that. And when I come up with something that I'm — scratch my head about why is everybody assuming this, that's what I wanted to find out. Well, I don't think it's an assumption. I mean, I think if we actually look at the language, subject to broadens foreclosure. Well, subject to really means can be foreclosed on. And you agreed with me that it actually can't and wasn't. Well, how could a — so how could a GSC property interest be foreclosed? If it's already got the property interest, the only thing that— Because they could have — I mean, but you're assuming they're talking about these liens, and we don't know that. I mean, in fact, I — how many houses do you think Freddie Mac actually owns for some period of time? Owns it as real estate? Like, owns it as title? Yes. Some small number of thousands, maybe? Well, when it forecloses, I presume it buys the houses itself often, and at least for some period of time is holding them until they sell them, right? Correct. Okay. So there's not a null class at all. No. But if we assume that foreclosure means to be foreclosed and deprived of the property interest, then that's what's going on with this lien. The lien is being foreclosed. It's being eliminated. No. The lien is being extinguished as a result of a foreclosure on some other property. Well, with respect, Your Honor, I think what happens in a typical— Am I wrong about the fact that in the usual real estate world, that's not what you would say? In the usual real estate world, what happens is one party's interest is foreclosed by the other party's interest, right? The bank comes in and it forecloses, extinguishes the title owner's interest in the property. And here, all this— It could be. I did say, you know, I tried to do some reading on what foreclosure means and so on, and, you know, I could be just all wet, but it just slightly bothers me. And if we look at the outcome, all I would suggest to the Court is if we look at the outcome of the FDIC cases, and there are many, and they relate to tax lien foreclosures, and they apply to bank liens, and they say the bank lien cannot be extinguished through the taxing authority's foreclosure of its concededly priority lien. So we're not writing on a blank slate here. Okay. Anything else? Yeah. I wanted to talk briefly about the evidence. The challenge really is to the utility of business records. Freddie Mac submitted a declaration that explains what the business records say. Freddie Mac's business records clearly indicate that it acquired the loan, it funded it, long before either of these HOA sales took place. And so what we've got is metaphysical doubt about whether Freddie Mac's business records are accurate and reliable. That's just not good enough. Everyone else who ---- In this instance, the recorded beneficiary was Bank of America? Correct. And to ask the same question I asked before, so if you wanted to know, you know, that Freddie Mac was standing behind this, what would you do? Go to the Bank of America and say, are you the real person or is there somebody else? What would you say? You always go to the servicer and ask. I don't know what answer it might have been. I mean, there are Gramm-Leach-Bliley and other constraints on what can be disclosed and what can't. We don't know because these acquirers, and to my knowledge, no acquirer ever did ask. Someone could go to FHFA. If they knew of the statute, the statute protects conservers. I don't know if that's the answer to all this that people would be asking nowadays. That hasn't been the experience. And I think what's happened here is that acquirers may have been surprised to learn of the statute, that it's not really an issue that they didn't know who owned the lien. It's that they didn't know that GSE liens were protected. Has anybody, do you know, and you seem to know a lot about this, in either Nevada or any of the other states that have similar statutes, trying to fix the state statutes in any way to account for this? I know Nevada amended Section, Chapter 116, when there was the notice problem was being litigated. And so Nevada amended the statute to fix one issue with the HOA foreclosure statute. What? What did they do? That's what culminated. What did they do? They amended the statute to now make it clear that it mandates notice. Mandates notice to whom? Notice to junior lien holders and notice so that the bank now must be given notice. I don't want to make an argument about somebody else's case. No, no. But I'm just curious. There's been ongoing litigation. There's now a split between this Court and the Nevada Supreme Court about whether the notice provisions of the state foreclosure statute that governs cases like these pre-amendment, and there was amendment that took effect, I think, in October. But the notice is to the, would be to the Freddie Mac? To the junior lien holders, correct. Would the result that both the buyer and Freddie Mac would know that Freddie Mac was there? I'm not. So it's notice that the HOA would provide to all the lien holders, and so that that notice. I take it those are the recorded lien holders. Correct. And that's if, it would have put Freddie Mac on notice through its servicer or through merge. But it still would just go to the, it would go to the recorded beneficiary. Right. And I'm not suggesting that the Nevada legislature has done anything to address whatever issues there might be from, it's from the Nevada Supreme Court's adoption of the restatement. That's up to the Nevada legislature. If the Nevada legislature wants to change a system that the Nevada Supreme Court has held, allows, and for good reasons, plenty of very good efficiency reasons, and facilitating a secondary mortgage market, and making sure that borrowers can contact the entity that can actually assist them with a problem. That's why you want the recorded beneficiary to be the servicer and not the investor. The investor typically, and certainly the case for Freddie Mac, doesn't deal directly with the borrower. And it can't provide any useful assistance. That's delegated down to servicers. So it helps everyone to have the servicer appear in the land title records. And that's why states like Nevada, and why the restatement encourages that, and why states like Nevada have enacted it. I should also point out. Can I just ask, this is perhaps a short tangent, but there's a statement in the record that the conservator has not consented and will not, dated 2015, I believe?  Can you just clarify what that means? Is that a stopgap, just confirming blanket refusal? What's that there? Why is that there, and what should we make of it? Well, so the conservator, I think, wanted to make clear to the world at large that it had never consented to any of these. As a result of all the problems. It did not intend to consent. And what happened was, as with the FDIC, which if we actually read the policy statement that my friend, Mr. Aon, refers to, the FDIC says, hey, we were getting a lot of incoming requests for consent. And so we thought it would be efficient to set forth our thinking on the matter. And so they did that. Now, FHFA has not had that experience. People have not been coming to FHFA to request consent. And so FHFA, at the first reasonable opportunity, when it realized its consent might be an issue, it issued its own policy. As federal agencies often do, its policy differs from that of the FDIC. But Mr. Aon is not correct that if these cases had been FDIC rather than FHFA cases, that consent would have been presumed. The FDIC provision says, it's true, that it says where the interest is not of record, we consent in advance. But it says of record means recorded in accordance with local law. And as we know, here, Freddie Mac's interest was recorded in accordance with Nevada law because Nevada law does allow the owner to record in the name of the servicer or the nominee. It really comes down to the fact that the beneficiary of record on the deed of trust is not the owner. It may be, but it need not be the owner of the security interest. And Congress, in its wisdom and balancing the equities as it saw fit, elected to protect FHFA conservatorship liens regardless of whether the name of FHFA, Fannie Mae, or Freddie Mac appears in that blank for a record beneficiary of the deed of trust. We do rely on the restatement. Restatement section C is the one that applies here. Restatement section B concerns the transfer of a note and what happens when the note is given to another person. So someone else becomes the lender. And that just has no application here because Freddie Mac owned the loan the whole time. The question is what happens when Freddie Mac names its servicer or names MERS as the beneficiary of the deed of trust. That's addressed in restatement in comment C. The plaintiff's lawyer in the previous case suggested that there was a caveat in the restatement. Yes. My friend was referring to comment B. And comment B is not talking about the situation presented here. Comment B is talking about if Freddie Mac sold the note, sold the entire loan to Wells Fargo, that the restatement correctly acknowledges that if Wells Fargo doesn't make sure that whoever shows up on the deed of trust is acting on Wells Fargo behalf, then it's at risk. But if it's MERS, it's just going to stay there. Correct. If it's MERS, it doesn't matter. And no one should be any better off with regard to finding anything else. That's correct. But you don't think the restatement addresses that question? The restatement endorses MERS. I mean, that's what it's the restatement speaks in terms of servicers. MERS is a special kind of servicer. It's very limited in what it can do. But, yes, the restatement addresses the MERS situation in comment C. Comment B addresses a different situation where if, you know, Citibank is the owner of the note and Citibank is also the record beneficiary as servicer, and then it sells to Wells Fargo, and Wells Fargo doesn't insist on a new assignment of the deed of trust, then Wells Fargo is at some risk. Citibank could do something adverse to Wells Fargo's interest. And in that situation, a bona fide purchaser would have some protection. But where it's MERS or where it's an entity that actually does act on behalf of the true owner of the note and the deed of trust, then here it protects that interest. Briefly, McFarland and Monrad, the Court is, or I should say Judge Mueller, I think, got it right. The statutes are different. Also, this Court's Monrad decision rejects the logic. It actually sort of pre-rejects it because it came first. It predates the McFarland decision. But this Court looked at whether a companion provision, it's 1825b3, which sets forth a penalty bar. The suggestion was made in that case that, hey, the penalty bar falls under this provision in FIREA and it's limited to taxation. And this Court said, no, a penalty that related to a severance agreement was also covered. So the thought that those 1825b provisions might be limited to taxation and then by extension, the federal foreclosure bar in HERA should be similarly limited has been rejected by this Court. So there would, I don't think that the Court has the ability to revisit that other than en banc. So, yeah, I think the evidence, we have got an explanatory affidavit. We've got clear business records. They're reliable. In any event, all of the entities that were in the chain of beneficiaries in the public record were before the courts. MERS and Chase are parties to the Elmer case. If anyone thought MERS or Chase is the true owner, then MERS or Chase were right  The question, of course, is that if MERS and Chase were the true owners, I don't know about MERS because it's an amalgam, but Chase, then the Federal statute wouldn't apply and Mr. Elmer would have his house. Correct. The statute wouldn't apply. But if someone thought Chase was the true owner, they might have inquired of Chase since they were in the courtroom. And the same is true of Bank of America in the Berezovsky case. Bank of America was a party to the case. And so the suggestion that we needed to wait until after the summary judgment argument to even submit a 56D affidavit, it's a little fanciful. If anyone thought that somebody who showed up in the chain of beneficiaries in the land records was the real killer or the true owner, however you want to think about it, they were right there in the courtroom. And they were certainly able to approach that entity. Okay. You are out of time. Thank you very much. I appreciate the court's attention and indulgence. Thank you very much, Your Honor. A couple very brief points. What is still at issue, and there was at least a 56FD request in the Elmer case that requested on the screenshot. But the declarations, if you look at them, they're hearsay. And they still, even though they're trying to argue that they're business record exceptions, if you actually look at the language of the declaration, they're not from a custodian of record. So what's the ultimate point of these arguments in both cases? Is that there should be, you should win on summary judgment or you should, there should be a trial over when Freddie May actually became the owner or acquired the loan? What is it you want out of all this? Ultimately, we want the summary judgments being reversed and remanded to the lower courts so they can actually show and prove that they have ownership. Do you really think there's any chance that they're not going to? I'm sorry? Do you really think there's any chance that it's not going to pan out? I mean, it seems like a fair, I mean, given the fact that there are interesting and high stakes issues here, this one seems to be the kind of least worth worrying about, no? But we're still arguing about what Nevada law and how it defines these property interests. Well, not on this point, though. Yes. On this point, you're just making a very narrow evidentiary argument, I gather, which is they haven't sufficiently proven their property interests. That's correct. Because they, you've got on the one hand in both cases where you have conflicting evidence of. The conflicting evidence. I'm sorry? What's the conflicting evidence? You have the recorded assignments and the notices that are recorded. They're actually recorded on the property sheets. But they're not conflicting, because under Nevada law, if it's true, then the fact that you have recorded Meurs in one case and Chase in the other is not a conflict. It's because it's only enforceable. Those enforcement issues are only to the benefit, I'm sorry, to the borrower and not to third parties that we have in this case. I understand that. But what you just got up here to argue about is whether Freddie, there was sufficient evidence that Freddie Mac actually was, had acquired the loan at the relevant time. Not anything about enforcement, not about recording, not anything else. Just, am I right about that? That's what you got up here. Yes. And we're challenging you. Which is just an evidentiary question. Do they show enough to prove it? Now, what's the contrary evidence? That they didn't, that they're showing proof of the ownership? Well, it's just the affidavits and the declarations they provide, which we believe doesn't meet the hearsay requirements or the exceptions. There's no contrary evidence. The actual recorded documents say. That's not contrary evidence because under Nevada law it's okay to do that. Other than the recorded documents, is there any contrary evidence? No. Besides the actually recorded documents that say it's in the name of a lender, because that's the only, and really the recorded documents are the only documents that a potential third party is going to be able to even see. And those lenders who were named were in the courtroom? I'm sorry? The last point made by Mr. Johnson is that those lenders were named as parties to the case. That's correct. They were. They're not asserting an ownership interest? The lenders? Right. J.P. Morgan Chase isn't saying, no, we're really the owner here. Well, at the time of the lawsuit was made, they had the recorded interest in order for them to, for Mr. Barofsky. I understand you're talking about recorded interest, but in factual terms, I mean, if we send this case back for evidence, J.P. Morgan Chase hasn't jumped up so far and said, nope, this is really ours. And that's the only contrasting or contesting evidence so far that's been identified. Well, it's almost a shift in positions because now you're, because if Freddie doesn't own the note at this point or doesn't own the note, then Bank of America and Chase are extinguished from this case. So that's, so it's a big evidentiary issue at this point because realistically the declarations that they provided really, they're at best self-serving, but they still don't meet the requirements under the hearsay exception. Okay. Thank you. Thank you very much. Thank all of you for really useful arguments in a complicated situation. And the case of Barofsky v. Bank of America is submitted and we are adjourned. Thank you.
judges: Berzon, Clifton, Mueller